IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

United States of America,

v.  Case No. 1:21-cr-426-MLB

Emmanuel Ruiz (1) and Roberto
Vazquez (4),

        Defendants.

_____/

**ORDER**

Defendant Emmanuel Ruiz and Defendant Roberto Vazquez filed motions asking the Court to order the United States to disclose immediately the identity of two confidential informants the United States worked with during the investigation of this matter. (Dkts. 361, 383, 388.) Defendant Vazquez also moved to strike language from the indictment discussing his alleged prior convictions. (Dkt. 363.) Magistrate Judge J. Elizabeth McBath recommends the Court deny all those motions. (Dkt. 460.) The Court adopts her recommendation.

## I.      Background

In early 2020, federal agents began investigating a group of men incarcerated in Georgia state prisons who were using contraband cell phones and girlfriends or other people outside the prison to broker deals for the sale of methamphetamine and marijuana. (Dkt. 391 at 1-4.)[1] Agents identified Defendant Ruiz (an inmate at Wilcox State Prison in Abbeville, Georgia) as a methamphetamine distributor who brokered drug transactions with the help of his girlfriend, Defendant Angela Cable. Agents also identified Defendant Vazquez (an inmate at Georgia State Prison in Reidsville, Georgia) as a member of the same organization.

As part of this investigation, agents obtained the assistance of a Source of Information ("SOI") who claimed to have previously purchased methamphetamine from Defendant Cable. When the SOI (working with agents) called Defendant Cable to discuss a future drug transaction, Defendant Cable conferenced Defendant Ruiz into the conversation.

---

[1] The Court, like the Magistrate Judge takes these facts from the United States's response to Defendants' motion for disclosure of confidential informants. (Dkt. 391.) Defendants do not challenge any of these facts in connection with the pending motions.

Defendant Ruiz joined the call on a contraband cellphone while incarcerated. Law enforcement recorded the call. The SOI and Defendant Ruiz negotiated for the SOI to purchase ten kilograms of methamphetamine for $5,000 per kilogram. A couple of weeks later the SOI had additional conversations with Defendant Ruiz and/or Defendant Cable about the SOI purchasing (now) three kilograms of methamphetamine from Defendant Ruiz. Law enforcement recorded those calls as well.

During one of the calls, the SOI introduced a confidential source ("CS") to Ruiz, saying that person was related to the SOI. Defendant Ruiz then had additional conversations with the CS about the drug transaction. Again, agents recorded the calls. The CS and Defendant Ruiz also exchanged text messages. On February 14, 2020, the CS (accompanied by an undercover agent) went to a location given to him by Defendant Ruiz and purchased about three kilograms of methamphetamine from someone working for Defendant Ruiz. Several weeks later, agents had the CS place several more (recorded) calls to Defendant Ruiz to arrange another purchase. On March 24, 2020, the CS completed that transaction, paying someone Defendant Ruiz sent to

3

deliver the drugs $5,000 and receiving one kilogram of methamphetamine.

Defendant Vazquez was not involved in these transactions, and the United States says they are aware of no connection between him and either the SOI or the CS.

Eventually, the United States obtained an indictment charging Defendants Ruiz and Vazquez (as well as 13 others) with conspiring to possess with intent to distribute methamphetamine in violation of Title 21, United States Code, Section 846. (Dkt. 18.) The United States also charged Defendants Ruiz and Vazquez with various substantive offenses related to the sale of methamphetamine. (*Id.*) For the purpose of seeking enhanced penalties, the United States included a paragraph in the indictment notifying Defendant Vazquez of its contention that, before the time of the offense at issue here, Defendant Vazquez had been "convicted of Armed Robbery; Aggravated Assault; Burglary; and Terroristic Threats and Acts; serious violent felonies, for which he served more than 12 months of imprisonment." (*Id.* at 6.)

Discovery materials produced by the United States referred to the SOI and CS. Defendant Vazquez thus filed a motion to disclose the

4

identity of both informants. (Dkt. 361.) He also moved to strike the statement about his prior convictions. (Dkt. 363.) Defendant Ruiz moved to adopt his co-defendant's motion for disclosure and then filed his own supplemental motion seeking the same thing. (Dkts. 383, 388.) At a pretrial conference held on November 17, 2022, the United States represented that it intends to call both the informants as witnesses at trial and thus will be including them on its witness list.

Magistrate Judge McBath issued a nonfinal Report and Recommendation saying this Court should deny the motions for disclosure without prejudice for Defendant Ruiz and Vazquez to renewing their motions if the United States does not disclose the informants' identities on its witness list. (Dkt. 460 at 7.) The Magistrate Judge also says the Court should deny Defendant Vazquez's motion to strike the reference in the indictment to his prior convictions. (*Id.* at 12.) Both Defendants filed objections. (Dkts. 466, 467.)

## II.  Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation ("R&R"). 28 U.S.C.

§ 636(b)(1); Fed. R. Crim. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge should "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted). For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

Parties filing objections to a magistrate judge's R&R must specifically identify those findings to which they object. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id*.

### III. Motion for Disclosure of Informant Identities

In *Roviaro v. United States*, 353 U.S. 53 (1997), the Supreme Court recognized that, while the government has the right keep confidential the identity of an informant in a criminal case, that right is limited. *Id.* at 53. Specifically, the United States must identify an informant's identity

6

if doing so is "relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause." *Id*. at 60-61. In balancing these competing interests, courts consider "(1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the government's interest in nondisclosure." *United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009). The defendant has the burden of establishing these factors warrant disclosure by a "sufficiently specific demonstration of the relevance and potential helpfulness of the informer's testimony." *See Rugendorf v. United States*, 376 U.S. 528, 534-35 (1964).

The Magistrate Judge concluded she was not required to conduct this analysis because the United States has said it will call the SOI and CS at trial and *Roviaro* only applies when the United States does not intend to call the confidential informant. (Dkt. 460 at 5.) In support of this conclusion, the Magistrate Judge—quoting *Banks v. Dretke*, 540 U.S. 668, 697 (2004)—concluded "[t]he issue of evidentiary law in *Roviaro* was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does not call as a trial witness."

7

(Dkt. 460 at 5.)  Defendant Ruiz says the Magistrate Judge was wrong to reach this conclusion because that language in *Banks* was dicta and the core principle from *Roviaro* that a defendant must be given information (including an informant's identity) that is necessary to the preparation of his or her defense applies even when the United States plans to call the informant.  (Dkt. 467.)[2]

This Court agrees with the Magistrate Judge and the long list of decisions she cited in concluding Defendants' reliance on *Roviaro* is misplaced in the light of the United States's representation that it will call the CS and SOI at trial and thus will produce identifying information and related *Jenks* Act, *Brady,* and *Giglio* materials before trial.  (Dkt. 460 at 5-6.)[3]  While the Supreme Court's statement in *Banks* may have

---

[2] Defendant Vazquez makes no specific objections to the Magistrate Judge's recommendation regarding the disclosure of the CS's and SOI's identities other than to adopt his prior motion to adopt Defendant Ruiz's motions for disclosure.  (Dkt. 466 at 5.)

[3] The United States contends that its obligation to provide *Brady* and *Giglio* information does not support Defendants' request for immediate disclosure of the CS's and SOI's identities because those obligations merely require disclosure "in time for it to be put to effective use in cross examine witnesses at trial."  (Dkt. 391 at 8 n.2.)  While that is a correct statement of the law, it does not mean the Unites States may withhold *Brady* information until the eve of trial.  The Court agrees the United

been dicta, it was an accurate statement regarding its prior decision in *Roviaro*. That case involved the failure to disclose the names of a confidential informant who did not testify at trial. And that was important to the Supreme Court's decision. The Court explained that the informant was the "sole participant, other than the accused, in the transaction charged" and the "only witness in a position to amplify or contradict the testimony of government witnesses." *Roviaro,* 353 U.S. at 64. And there was evidence that, shortly after the defendant's arrest, the informant said he had never seen the defendant before; testimony that could significantly have undermined the United States's case. *Id.* at 64-65. By not calling the informant as a witness and withholding the informant's name, the United States prevented the defendant from presenting this testimony to the jury and, possibly, using the witness to contradict the government's witnesses. The United States essentially inoculated its case against any attack based on the informant's testimony.

---

States may withhold information that would identify the CS and SOI until closer to trial, the United States should not, however, read this as any suggestion it may otherwise withhold *Brady* information.

That is not possible here. The United States will call the SOI and CS as witnesses, ensuring Defendants will have an opportunity to cross-examine them. So the reasoning of *Roviaro* is inapplicable. This case—as the Magistrate Judge recognized—remains squarely within the well-settled rule that "a criminal defendant has no absolute right to a list of the government's witnesses in advance of trial." *United States v. Johnson*, 713 F.2d 654, 659 (11th Cir. 1983). If the United States reneges on its representation that it will call the witnesses, the Court can take appropriate action, including continuing the trial, excluding other evidence, or even granting a mistrial. But, until then, the United States is entitled to the acceptance of its representation.

Even considering the *Roviaro* balancing test, the Court still would not order disclosure. As to the first factor, both the CS and SOI were actively involved in telephone calls with Defendant Ruiz to negotiate the purchase of methamphetamine. But, agents recorded those calls. The Court is aware of no calls that were not recorded. An undercover agent accompanied the CS during the February 14 purchase and there is no evidence to suggest anything happened outside the agent's presence. It appears the CS may have attended the March 27 purchase without the

agent. But agents recorded the calls arranging the transaction. All of this is to say, Defendant Ruiz has not shown (or even argued) the extent of the SOI's and CS's involvement in the transaction warrants disclosure. And, this case certainly does not present the factual scenario presented in *Roviaro*. Given the United States's representation that neither the SOI nor the CS had any involvement with Defendant Vazquez, it is even harder to understand how the first factor weighs in his favor for disclosure. For the second factor, Defendant Ruiz does not identify any relationship between his likely defense and the SOI's or CS's probable testimony. He simply says he needs their names to interview them and "fully develop" his "potential and actual defenses." (Dkt. 467 at 3.) This does not demonstrate any need for disclosure or show how disclosure would significantly aid Defendant Ruiz in establishing any defense. Defendant Vazquez (in his initial motion) claimed the informants "are in a critical position to amplify or contradict the testimony of other witnesses" and "are uniquely positioned to assist Mr. Vazquez in establishing a defense." (Dkt. 361 at 6.) That contention fails for the same reason Defendant Ruiz's claim assertion fails. And even more so given that it appears the informants had no contact with Defendant

11

Vazquez. As to the final factor, the United States says it has an interest in withholding the requested information to protect the SOI and CS. Neither defendant challenges this.

So even if Defendant Ruiz is correct and the Court must apply the *Roviaro* balancing test, that analysis would not change the Court's conclusion that Defendants have not established a right to early disclosure of the SOI's and CS's identities. The Court thus adopts the Magistrate Judge's recommendation and denies Defendant Ruiz's and Defendant Vazquez's motions for disclosure.

## IV. Motion to Strike

Federal Rule of Criminal Procedure 7(d) "authorizes the Court to strike surplusage from an indictment on motion of the defendant." Fed. R. Crim P. 7(d). The standard is "surplusage"—meaning something excessive or nonessential. *See* Merriam-Webster.com (Merriam-Webster Dictionary) (May 2023). A Court thus may strike allegations in an indictment only when "it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (quoting *United States v. Huppert*, 917 F.2d 507, 511 (11th Cir. 1990)). To prevail on a motion

under Rule 7, the defendant thus must show, first, that the allegations are not relevant to the charges and, second, that the challenged language is unfairly prejudicial and inflammatory. This is a "most exacting standard." *Awan*, 966 F.2d at 1426 (internal quotation omitted).

The Magistrate Judge recommends denial of Defendant Vazquez's motion to strike the paragraph of the indictment that identifies his prior convictions. The Magistrate Judge concluded Defendant Vazquez failed to demonstrate the language at issue was either immaterial or prejudicial. (Dkt. 460 at 8.) The Court agrees with that assessment of relevance given the United States's obligation to advise Defendant Vazquez of the enhanced penalties his faces under 21 U.S.C. §§ 841(b)(1)(A)(viii) and 851 as a result of one or more prior convictions and the fact a jury will likely have to decide whether Defendant Vazquez served a term of imprisonment of more than 12 months on one or more of those convictions.

Defendant Vazquez argues in response that the reference to his conviction for aggravated assault should be stricken because that conviction does not—as a matter of law—constitute a "serious violent felony" under 18 U.S.C. § 3559(c)(2), the operative definition pursuant to

13

21 U.S.C. § 802(58). (Dkt. 466 at 3-4.) But, as the Magistrate Judge concluded, at this stage of the proceeding, the Court must accept that allegations in the indictment as true. (Dkt. 460 at 10.)

While denying immediate relief, there are plenty of things the Court can do to minimize any alleged prejudice to Defendant. That includes redacting the indictment and bifurcating the trial so the jury does not learn of the section 851 enhancements until (and only if) it first convicts Defendant Vazquez of the underlying conduct. Defendant Vazquez could also stipulate to the length of his prior incarceration, or the Court could use a special verdict form and limiting instructions to ensure a jury does not consider any prior convictions when deciding guilt or innocence. For now, the Court adopts the Magistrate Judge's recommendation and denies Defendant Vazquez's motion to strike. Defendant Vazquez can raise the issues again at the pretrial conference, including whether aggravated assault constitutes a serious violent felony. The United States should be prepared—at that pretrial conference—to respond to that substantive argument as it refused to do so before. (Dkt. 392 at 12 n.1.) Both parties should be prepared to discuss how the jury can be permitted to make the necessary findings while not

14

subjecting Defendant Vazquez to unfair prejudice as a result of his prior convictions.

## V.  Conclusion

The Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 460).  The Court **DENIES** Defendant Emmanuel Ruiz's and Defendant Roberto Vazquez's motions seeking immediate disclosure of the identity of the SOI and CS (Dkts. 361, 383, 388).  The Court also **DENIES** Defendant Vazquez's motion to strike language from the indictment discussing his alleged prior convictions (Dkt. 363).

**SO ORDERED** this 19th day of May, 2023.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE